IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Freddy Lewis Barnette, ) | CIVIL ACTION NO. 9:09-0949-RBH-BM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| Warden Padula, SCDC; Associate Warden ) | |
| Brooks; Ernest Rowe; Inmate Records ) | |
| Supervisor State Classification; James ) | |
| Brennan, Branch Supervisor Inmate Records; ) | |
| Dr. Stahl, Resident Doctor; and ) | |
| Nurse McDonald, Supervising Nurse, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

This action has been filed by the Plaintiff, pro se, pursuant to 42 U.S.C. § 1983. Plaintiff, an inmate with the South Carolina Department of Corrections, alleges violations of his constitutional rights by the named Defendants.

The Defendants[1] filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on August 3, 2009. As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on August 4, 2009, advising Plaintiff of the importance of a motion for summary judgment and of the need for him to file an adequate response. Plaintiff was specifically advised that if he failed to respond adequately, the Defendants' motion may be granted, thereby ending his case. After receiving an extension of time to respond, Plaintiff filed a memorandum in opposition to the

---

[1] The Defendant Stahl is now deceased. See Suggestion of Death (Court Docket No. 37).



Defendants' motion on September 16, 2009.

Defendants' motion is now before the Court for disposition.[2]

**Background and Evidence**

Plaintiff alleges in his verified complaint[3] that on March 10, 2009 he was found by the Defendant Dr. Stahl to have lower lumbar spinal arthritis, and was prescribed pain medication. Plaintiff further alleges that on March 11, 2009, he submitted a request to the Defendant Associate Warden Brooks complaining that, due to his medical condition, he was enduring "physical suffering" because he had to sit in metal chairs and sleep on metal beds without sufficient padding. Plaintiff alleges that, because he was part of the "A.T.U." program, the Defendant Warden Padula would not allow Stahl to write him a medical pass allowing him to have extra padding for his bed. Plaintiff alleges that he asked to be allowed to leave the A.T.U. program, which was denied, and that his request to be placed in a lower bunk was also denied. Plaintiff alleges that he suffers from "stabbing" pain, and that he fears that his legs might give way due to his being unable to find a comfortable position in his bed. See generally, Verified Complaint.

In a verified amended complaint, Plaintiff alleges that he has made several requests to the Defendant Nurse McDonald to obtain a medical pass to exclude him from having to sit for up

---

[2]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. The Defendants have filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[3]In this Circuit, verified complaints by pro se prisoners are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). Plaintiff has filed a verified Complaint. Therefore, the undersigned has considered the factual allegations set forth in the verified Complaint in issuing a recommendation in this case.

2



to five hours at a time in metal folding chairs, as well as to get extra padding for his metal bed and a pillow, but that he was told by McDonald that no passes can be issued except by a physician. Plaintiff further alleges that he was told by McDonald in March that he would be scheduled to see a specialist, but that now he is being told that nothing wrong was ever found with his back. Plaintiff alleges that Dr. Stahl agreed that prolonged sitting in metal chairs and sleeping on thin mattresses was going to make his pain worse, but was told that Brooks and Padula would not allow him to issue any medical passes to an inmate in the A.T.U. program. Plaintiff alleges that Dr. Stahl has prescribed him various medications, including Neurontin and Piroxicam. Plaintiff also believed he was going to be scheduled to see a specialist, but that when he inquired about the expected visit to see a specialist, he was told that there was no record that he had any spinal injuries and that his x-rays were normal.

Plaintiff also alleges in his amended complaint that he is missing "credits" over a two year span dating back to April 6, 2007, and that the improper calculation of his jail time credit has caused him to be held past his max-out date. Plaintiff alleges that he has forwarded information concerning this issue to several individuals, and that he has also filed a grievance against SCDC Classification, to which he has received no response. Plaintiff also complains that he is in the fifth month of the six month A.T.U. program, which is supposed to help inmates with addiction problems, and that the only way he can leave this program is with a charge that will extend his time. Plaintiff alleges that he is being retaliated against by program officials because he has asked to be released from the program. Plaintiff seeks monetary damages, including to be compensated for time served past his release date. Plaintiff also wants a court order for the issuance of his "owed jail credits". See generally, Verified Amended Complaint.

3



In support of summary judgment in the case, the Defendant Yvonne McDonald has submitted an affidavit where she attests that she is Nurse Administrator at the Lee Correctional Institution, where Plaintiff is housed. McDonald attests that she has attached a copy of Plaintiff's Health Services Medical Summary to her Affidavit as Exhibit A, which reflects the medical treatment received by the Plaintiff from January 16, 2008 through June 22, 2009. McDonald attest that Plaintiff was seen and evaluated for complaints of lower back pain on March 2, 2009, at which time he was issued Ibuprofen and Chlorzoxazone starter packs. An appointment was also made for Plaintiff to be seen by a physician. Plaintiff was seen and evaluated again on March 10, 2009, with x-rays of his lower spine being taken at that time. Plaintiff was then seen by Dr. Stahl on March 11, 2009, who reviewed Plaintiff's x-rays and determined that they showed arthritic changes at L-5/S-1. Dr. Stahl prescribed Neurontin and Piroxicam for the Plaintiff.

McDonald attests that Plaintiff was seen again for evaluation on March 17, 2009. Plaintiff was complaining of increased pain and numbness in his lower back, and Dr. Stahl increased Plaintiff's Neurontin dosage. On March 23, 2009, the LCI medical department received the radiology report related to Plaintiff's x-rays, which concluded that no acute process was identified in the L-S spine; that the sacrum appeared normal; and that the A.P. view of Plaintiff's coccyx appeared to be unremarkable. McDonald attests that on March 27, 2009, she was contacted by Padula's office regarding Plaintiff's request to be transferred from the A.T.U. program. McDonald attests that she informed Padula's office that Dr. Stahl had reviewed the x-rays of Plaintiff's L/S spine and coccyx, and was of the opinion that they did not support a finding of any deformity and that Plaintiff's alleged complaints were not supported by the x-rays. McDonald attests that she further informed Padula's office that Dr. Stahl had increased Plaintiff's dosage of Neurontin and that



Dr. Stahl was of the opinion that Plaintiff would benefit from the A.T.U. program.

On April 7, 2009, Plaintiff presented to the medical department with further complaints of severe pain in his lower back, and requested a follow up appointment with the physician for possible referral to an orthopedist specialist. McDonald attest that, as of the date of her affidavit (July 30, 2009), Plaintiff's request for an evaluation by an orthopedic specialist was pending, and would ultimately have to be approved by the SCDC Medical Director in Columbia. McDonald further attests that, while Plaintiff's request is pending, the LCI medical department has continued to monitor his condition, respond to his complaints of pain, and that LCI physicians continue to provide medication to the plaintiff on an as needed basis. See generally, McDonald Affidavit, with attached medical records.

The Defendant Ernest Rowe has also submitted an affidavit, wherein he attests that he is a records analyst with the South Carolina Department of Corrections, and that his duties include the calculation and maintenance of inmate sentences. Rowe attests that he has personally conducted a comprehensive review of Plaintiff's inmate file and incarceration history, and that in connection with this review he has completed an SCDC max-out date calculation worksheet, a copy which is attached to his affidavit as Exhibit A. Rowe attests that, from a review of Plaintiff's inmate records, as of August 26, 2009 (the next cycle date for calculation of Plaintiff's max-out date), assuming Plaintiff does not loose additional credits, it is anticipated that he will have 138.484 days left to serve, subject to further reductions or additions. Rowe attests that Plaintiff's records clearly indicate that he is now serving the time ordered on his sentence, and that all time served, and to be served, by the Plaintiff has been calculated appropriately and in compliance with all applicable South Carolina statutory laws and SCDC polices. See generally, Rowe Affidavit, with attached Exhibits.



Plaintiff did not submit any evidence or exhibits with his response in opposition to the Defendants' motion.

**Discussion**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P. Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990). Here, after careful review and consideration of the evidence submitted, the undersigned finds and concludes that the Defendants are entitled to summary judgment in this case.

**I.**

**(Medical Claim)**

In order to proceed with a claim under § 1983 for denial of medical care, Plaintiff must present evidence sufficient to create a genuine issue of fact as to whether any named Defendant was deliberately indifferent to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 106



(1976); Farmer v. Brennen, 511 U.S. 825, 837 (1994); Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986); Wester v. Jones, 554 F.2d 1285 (4th Cir. 1977); Russell v. Sheffer, 528 F.2d 318 (4th Cir. 1975); Belcher v. Oliver, 898 F.2d 32 (4th Cir. 1990). After careful review and consideration of the evidence and arguments presented to this Court, the undersigned does not find that Plaintiff has submitted evidence sufficient to give rise to a genuine issue of fact as to whether any Defendant has violated his constitutional rights with respect to the provision of medical care, and that this claim should therefore be dismissed.

Specifically, Plaintiff has presented no evidence to show that any named Defendant was deliberately indifferent to any serious medical need. Rather, Plaintiff only generally alleges in his complaint that medical personnel refused to provide him with items he requested (additional padding for his bed and/or for a metal chair, and a pillow), and that he has not yet received a requested appointment with a specialist. Even assuming these allegations to be true for purposes of summary judgment, they do not in and of themselves constitute evidence of a constitutional violation; Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985)[Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim absent exceptional circumstances]; House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993) [Plaintiff's conclusory allegations insufficient to maintain claim]; and Plaintiff has presented no medical opinions or other competent evidence to support his claims or to show that he received inadequate medical treatment. See Scheckells v. Goord, 423 F.Supp. 2d 342, 348 (S.D.N.Y. 2006) (citing O'Connor v. Pierson, 426 F.3d 187, 202 (2d Cir. 2005) ["Lay people are not qualified to determine...medical fitness, whether physical or mental; that is what independent medical experts are for."]; Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987) ["Even though pro

7



se litigants are held to less stringent pleading standards than attorneys the court is not required to 'accept as true legal conclusions or unwarranted factual inferences.'"]; Green v. Senkowski, 100 Fed.Appx. 45 (2d Cir. 2004) (unpublished opinion) [finding that plaintiff's self-diagnosis without any medical evidence insufficient to defeat summary judgment on deliberate indifference claim].

    Not only has Plaintiff failed to present any evidence to support his medical claims, but in contrast to Plaintiff's general and conclusory allegations that he has received improper medical care, the Defendants have submitted substantial evidence to show that Plaintiff's medical needs are being adequately considered and addressed. The Defendant McDonald, a medical professional, has submitted an affidavit wherein she reviews the medical care Plaintiff has received during the relevant time period and opines that Plaintiff is being properly monitored and provided with medication. The Defendants have also submitted copies of Plaintiff's medical records, which reflect continuing and ongoing treatment of the Plaintiff for his complaints. Indeed, even Plaintiff himself concedes in his verified complaint that he is receiving prescription medications for his complaints of pain. None of the information contained in Plaintiff's medical records supports Plaintiff's claims of constitutionally inadequate medical care, nor has Plaintiff provided any exhibits to support such a claim, or any evidence from a medical professional to dispute Defendants' evidence showing he is receiving proper medical care.

    In sum, the undersigned can discern no evidence of a constitutional violation in the evidence presented to the Court. While Plaintiff may not agree with the extent and nature of the medical care he has received, he cannot simply allege in a conclusory fashion that he has not received adequate medical care or attention, otherwise provide no supporting evidence, and expect to survive summary judgment. Papasan v. Allain, 478 U.S. 265, 286 (1986) [Courts need not assume



the truth of legal conclusions couched as factual allegations]; Morgan, 829 F.2d 10, 12; see Scheckells v. Goord, 423 F.Supp. 2d 342, 348 (S.D.N.Y. 2006) (citing O'Connor v. Pierson, 426 F.3d 187, 202 (2d Cir. 2005) ["Lay people are not qualified to determine...medical fitness, whether physical or mental; that is what independent medical experts are for."]; see also Green, 100 Fed.Appx. 45 [finding that plaintiff's self-diagnosis without any medical evidence, and contrary to the medical evidence on record, insufficient to defeat summary judgment on deliberate indifference claim]); House, 824 F.Supp. at 477, 485 [Plaintiff's conclusory allegations insufficient to maintain claim]; Levy v. State of Ill. Dept. of Corrections, No. 96-4705, 1997 WL 112833 (N.D.Ill. March 11, 1997) ["A defendant acts with deliberate indifference only if he or she 'knows of and disregards' an excessive risk to inmate health or safety.'"], quoting Farmer, 511 U.S. at 837.

Plaintiff may, of course, pursue a claim in state court if he believes the medical care he has received has been inadequate. However, the evidence before the Court is insufficient to raise a genuine issue of fact as to whether any named Defendant was deliberately indifferent to his serious medical needs, the standard for a constitutional claim, and therefore his federal § 1983 medical claim should be dismissed. See DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 200-203 (1989) [§ 1983 does not impose liability for violations of duties of care arising under state law]; Baker v. McClellan, 443 U.S. 137, 146 (1976) [§ 1983 claim does not lie for violation of state law duty of care]; Estelle, 429 U.S. at 106 ["medical malpractice does not become a constitutional violation merely because the victim is a prisoner."]; see also Brooks v. Celeste, 39 F.3d 125 (6th Cir. 1994); Sellers v. Henman, 41 F.3d 1100 (7th Cir. 1994); White v. Napoleon, 897 F.2d 103, 108-109 (3d Cir. 1990); Smart v. Villar, 547 F.2d 112 (10th Cir. 1976) [affirming summary dismissal].



**II.**

**(Sentence Calculation Claim)**

With respect to Plaintiff's claim concerning the allegedly improper calculation of his max-out date, this is a claim properly raised in a habeas action, not in a lawsuit for damages under § 1983. See Preiser v. Rodriguez, 411 U.S. 475, 500 (1973)[Complaint or petition challenging the fact or duration of confinement should be construed and processed as a habeas corpus petition, while a complaint or petition challenging the conditions of confinement should be construed and processed as a complaint pursuant to 42 U.S.C. § 1983]. Hence, if Plaintiff wishes to challenge his confinement or state court proceedings, he should obtain habeas forms from the Clerk of Court and file a separate action, after he has fully exhausted his state remedies. Sampson v. Ozmint, No. 08-1717, 2009 WL 1834372 at * 2 and * 4 (D.S.C. June 25, 2009)[State inmate was required to file a habeas action, not a §1983 claim, to seek correction of a max-out or release date]; cf. Harris v. Classification Kirkland Correctional Institution, No. 07-2888, 2007 WL 2815582 at * 3 (D.S.C. Sept. 25, 2007)[Noting that, from the face of the Complaint, it did not appear that Plaintiff had properly exhausted his claim even if his § 1983 complaint regarding his max-out date was construed as a habeas petition].

In any event, even if this claim were properly before this court at this time, the Defendant Rowe (a records analyst with SCDC) has submitted an SCDC Max-Out Date Calculation Worksheet and other sentencing documents showing that Plaintiff's max-out date has been calculated properly. Plaintiff has provided no evidence to dispute any of these calculations or any of the other documents submitted by the Defendants. Rather, he just alleges in a conclusory fashion that his max-out date is being calculated improperly. House, 824 F.Supp. 477, 485 [Plaintiff's



conclusory allegations insufficient to maintain claim]. Therefore, this claim is without merit.

### III.

### (Classification Status)

Finally, with respect to Plaintiff's complaint about being in the A.T.U. program, Plaintiff's complaints about his participation in this program are not, by themselves, of a constitutional magnitude. Slezak v. Evatt, 21 F.3d 590 (4th Cir. 1994) [the Constitution vests no liberty interest in inmates retaining or receiving any particular security or custody status as long as the conditions or degree of confinement is within the sentence imposed]; Neal v. Shimoda, 131 F.3d 818, 828 (9th Cir. 1997) ["[A] prisoner does not have a constitutional right to be housed at a particular institution,..., [or] to receive a particular security classification...."]; Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995) ["[A] prison inmate does not have a protectable liberty or property interest in his custodial classification and an inmate's disagreement with a classification is insufficient to establish a constitutional violation."]. As for Plaintiff's general and conclusory claims that, since requesting transfer out of the A.T.U. program, he has been retaliated against by prison officials, these allegations are also, standing alone and without any supporting evidence, simply not sufficient to survive summary judgment. See Harris v. Ostrout, 65 F.3d 912, 916 (11th Cir. 1995)[case dismissed where Plaintiff produced nothing beyond his own conclusory allegations suggesting that prison official's actions were motivated by a retaliatory animus]; Adams v. Rice, 40 F.3d 72, 74-75 (4th Cir. 1994), cert. denied, 514 U.S. 1022 (1995); Southmark Prime Plus, L.P. v. Falzone, 776 F.Supp. 888, 891 (D.Del. 1991); see Nasim v. Warden, Md. House of Correction, 42 F.3d 1472, 1475 (4th Cir. 1995), reh'g 64 F.3d 951 (4th Cir. 1995), cert. denied, 516 U.S. 1177 (1996); see also Papasan, 478 U.S. at 286 [courts need not assume the truth of legal conclusions

11



couched as factual allegations]; Morgan, 829 F.2d at 12 ["even though pro se litigants are held to less stringent pleading standards then attorneys, the court is not required to 'accept as true legal conclusions or unwarranted factual inferences.'"]. Therefore, this claim is without merit and should be dismissed.

## **Conclusion**

Based on the foregoing, it is recommended that the Defendants' motion for summary judgment be **granted**, and that this case be **dismissed**.

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

October 13, 2009

Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 2940

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).

